## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

**PROMISE BATISTE and LIDIANE GUEDES,**

Plaintiffs

v.

**FORSYTH COUNTY BOARD OF EDUCATION, d/b/a FORSYTH COUNTY SCHOOLS, SCOTT FELDKAMP, in his individual and official capacity; VAN LEWSADER, in his individual and official capacity; JUSTIN MEWBORN, in his individual and official capacity; LISA CROSBY, in her individual and official capacity; and DEBORAH MAEDKE, in her individual and official capacity**

Defendants**.**

Civil Action No:
_____
**[JURY TRIAL DEMANDED]**

## COMPLAINT FOR DAMAGES

COME NOW Plaintiffs, Promise Batiste and Lidiane Guedes, by and through undesigned counsel, and hereby file her Complaint for Damages (hereinafter "Complaint") against Defendants FORSYTH COUNTY BOARD OF EDUCATION, d/b/a FORSYTH COUNTY SCHOOLS (hereinafter, "Defendant Forsyth County Schools"), SCOTT FELDKAMP, in his individual capacity and in

his official capacity as Principal of Vickery Creek Middle School (hereinafter, "Defendant Feldkamp"), VAN LEWSADER, in his individual capacity and in his official capacity as Assistant Principal of Vickery Creek Middle School (hereinafter, "Defendant Lewsader"), JUSTIN MEWBORN, in his individual capacity and in his official capacity as Assistant Administrator of Vickery Creek Middle School (hereinafter, "Defendant Mewborn"), LISA CROSBY, in her individual capacity and in her official capacity as a Teacher at Vickery Creek Middle School (hereinafter, "Defendant Crosby"), and DEBORAH MAEDKE, in her individual capacity and in her official capacity as a Teacher at Vickery Creek Middle School (hereinafter, "Defendant Maedke"), stating herein as follows:

## **INTRODUCTION**

1.

This is an action involving claims under the Thirteenth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1981, 1983, & 1988, Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, and the Individuals with Disabilities Education Act, arising from racial harassment, bullying, assault, hostile educational environment, deprivation of educational opportunity, failure to accommodate, and failure to provide free and appropriate public education in the least restrictive environment.

2

## PARTIES

2.

Promise Batiste is a citizen of the State of Georgia, who currently resides in Forsyth County, Georgia, within the jurisdiction of the Gainesville Division of the United States District Court for the Northern District of Georgia. Promise Batiste is an African-American of Brazilian ancestry who identifies as Black.

3.

Lidiane Guedes is a citizen of the State of Georgia, who currently resides in Forsyth County, Georgia, within the jurisdiction of the Gainesville Division of the United States District Court for the Northern District of Georgia. Lidiane Guedes is an African-American of Brazilian ancestry who identifies as Black.

4.

Defendant Forsyth County Board of Education is a public-school district organized and operated under the laws of the State of Georgia. It is located in Cumming, Forsyth County, Georgia, and does business as "Forsyth County Schools." Forsyth County Schools is not a municipality under the laws of the State of Georgia. But it is a state agency for federal constitutional and statutory purposes, and may act under color of law as understood by federal and state laws. Forsyth County participates in federal funding programs.

5.

Defendant Scott Feldkamp is the Principal of Vickery Creek Middle School, a school operated by Forsyth County Schools. He is a career educator who has served in assistant principal and principal positions with Defendant Forsyth County Schools for approximately 20 years. He is sued in his individual and official capacities.

6.

Defendant Van Lewsader is an Assistant Principal and 7th-grade administrator at Vickery Creek Middle School. He is sued in his individual and official capacities.

7.

Defendant Justin Mewborn is an Assistant Administrator and 6th-grade administrator at Vickery Creek Middle School. He is sued in his individual and official capacities.

8.

Defendant Lisa Crosby is a teacher at Vickery Creek Middle School. She is sued in her individual and official capacities.

9.

Defendant Deborah Maedke is a teacher at Vickery Creek Middle School. She is sued in her individual and official capacities.

## JURISDICTION AND VENUE

10.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

11.

The District Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States.

12.

The Northern District of Georgia is the proper venue for this action pursuant to 28 U.S.C. § 1391 because Defendant Forsyth County Schools is located within this District and "a substantial part of the events or omissions giving rise to the claim occurred" within this District.

13.

The Gainesville Division of the Northern District of Georgia is the proper division to bring this action pursuant to L.R. 3.1 because Defendant Forsyth County Schools is located within this Division and "the cause of action arose" in this Division.

# FACTUAL ALLEGATIONS

## 14.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

**Forsyth County, Georgia and Forsyth County Schools**

## 35.

Forsyth County, Georgia and Forsyth County Schools have well-documented histories of racial antagonism, racial mistreatment, and supporting private actions of racial antagonism and mistreatment against non-white people and students, especially against Black people and students.

## 16.

From 1912, when white mobs forced Black residents out of the County, until the late 1990s, Forsyth County was known nationwide as a "sundown" county, one in which Black people were actively discouraged to avoid settling in or appearing in the County under threat of harassment or death, often under color of law.

## 17.

In 1997, Black residents comprised less than a fraction of a percent of Forsyth County residents; being only 39 among an estimated population of 75,739 according to the U.S. Census Bureau and *The New York Times*.

48.

Since the 1990s, Forsyth County has experienced large population growth, often being counted among the ten fastest growing counties in the United States. Despite this growth, Black residents comprise an estimated 3.9 percent of Forsyth County residents according to the U.S. Census Bureau's American Community Survey. By comparison, Black residents comprise an estimated 34 percent of residents in the greater Atlanta-Sandy Springs-Alpharetta metropolitan statistical area, *including* Forsyth County's demography.

59.

Despite being fully aware of the County's notorious history, and despite state standards and state and federal laws that have clearly established safe, non-discriminatory learning environments as an obligation of school districts and a right of students for decades, Forsyth County Schools has not provided an educational environment where non-white students may learn without exposure to racial discrimination by other students, teachers, and administrators.

20.

Forsyth County Schools does not adhere to known, well-established state standards that obligate and instruct public-school districts how to prevent acts of racial discrimination and racially discriminatory learning environments.

21.

Forsyth County Schools does not adhere to known, well-established state standards that obligate and instruct public-school districts how to respond appropriately to known racial discriminations and racially discriminatory learning environments.

22.

Forsyth County Schools does not adhere to clearly established state and federal laws that require school districts to respond appropriately and systematically to known racial discriminations and racially discriminatory learning environments.

23.

Forsyth County Schools disciplines white students for racially harassment and discriminations they impose upon Black students and other students of color within Forsyth County Schools sporadically and in an arbitrary and capricious manner.

64.

Forsyth County Schools does not take systemic corrective or rehabilitative measures in response to racial harassments and discriminations white students impose upon Black students and other students of color in their schools.

75.

Forsyth County Schools does not protect Black students and students of color from racial harassment and discrimination despite clearly established state and

federal laws that obligate Forsyth County Schools' protective and safeguarding actions.

86.

Forsyth County Schools responds dismissively to Black parents' and parents of color's reports of racial harassment and discrimination despite clearly established laws that obligate Forsyth County Schools' systematic reporting, responsive, and investigative actions.

97.

Instead, Forsyth County Schools regularly discipline Black students and students of color when they respond to white students' racial harassment and discrimination that Forsyth County Schools' deliberate indifference routinely exposes them to.

108.

With respect to students of color and Black students' physical, psychological, discursive, pedagogical, and curricular safety, Forsyth County Schools behaves in an arbitrary and capricious manner that falls short of the reasonability standard state and federal laws evaluate ministerial acts of discretion in education management.

119.

Through intentional actions that benefit white students' physical, psychological, discursive, pedagogical, and curricular safety over that of Black

students and other students of color, Forsyth County Schools behaves in an arbitrary and capricious manner that both falls short of the reasonability standard state and federal laws evaluate ministerial acts of discretion in education management and violates Black students and other students of color's rights against governmental discrimination.

30.

Forsyth County Schools, through its policies and practices, and through the actions and inactions of employees under its supervision and control, including Defendants Feldkamp, Lewsader, and Mewborn, create the danger posed to Black students and students of color of student-on-student and teacher-on-student racial harassment and discrimination.

31.

Forsyth County Schools, through its policies and practices, and through the actions of its employees under its supervision and control, including Defendants Feldkamp, Lewdader, and Mewborn intentionally and affirmatively refused to intervene to stop students from bullying Promise Batiste despite having repeatedly notified her teachers, and despite Plaintiff's Mother, Lidiane Guedes having repeatedly notified Forsyth County Schools's teachers and administrators.

## April 2018

32.

In April 2018, Promise Batiste's Mother, Lidiane Guedes reported an incident of racialized assault that Promise Batiste experienced on Vickery Creek Middle School's (hereinafter "Vickery Creek") campus to Vickery Creek counselors.

33.

During that incident, a Vickery Creek female student assaulted Promise Batiste by grabbing her shirt and threatening to hit her.

34.

That student told Promise Batiste, she does not hang out with 'those people,' referring to African Americans or Black people.

125.

Ms. Guedes reported to the counselor that this student had uttered racial slurs to Promise Batiste in the past.

36.

During the April 2018 meeting, Ms. Guedes also reported the general racism within the Vickery Creek school environment. She reported that Vickery Creek singled out Promise Batiste and other students of color for discipline for actions the school did not discipline white students.

37.

Defendants have had notice of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste to at Vickery Creek since April 2018 and earlier.

38.

Defendants have had notice of the psychological and educational harm its actions and inactions in fostering a racially discriminatory and harassing environment have had on Promise Batiste and other Black students at Vickery Creek since April 2018 and earlier.

39.

Defendants have maintained a well-settled custom or practice of disregard for the psychological and physical safety of Black students' enrolled at Vickery Creek since April 2018 and earlier.

40.

Defendants have had actual knowledge of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste to at Vickery Creek since April 2018 and earlier.

41.

Defendants have been deliberately indifferent to the actual knowledge of the racially discriminatory and harassing environment that its actions and inactions

exposed Promise Batiste and other Black students and students of color to from April 2018 and earlier.

### February 2019

42.

On or about February 25, 2019, Vickery Creek hosted a "Glow Party." Promise Batiste attended with her best friend, a Black female Vickery Creek student. During the Party, the best friend went to hug a boy at the dance. He responded by violently pushing the best friend to the ground, saying "I don't fuck with niggers."

43.

Multiple Vickery Creek staff members were present; none did anything.

44.

Promise Batiste's best friend slapped the boy who violently pushed her to the ground and called her "nigger."

45.

Vickery Creek, which had done nothing in response to the boy's racialized verbal and physical assault, gave Promise Batiste's best friend three days of in-school suspension.

46.

Promise Batiste and another multiracial student reported this incident to Defendant Mewborn, a Vickery Creek assistant administrator.

47.

Ms. Guedes also reported this incident to Defendant Mewborn. During a meeting that Ms. Guedes scheduled, she expressed her deep concerns about both the racism at Vickery Creek and the related violence directed at Black students that Vickery Creek was indifferent toward addressing.

48.

Defendant Mewborn told Ms. Guedes that he could not discuss other students with her and therefore could not discuss any punishment the offending boy may have received. He also told Ms. Guedes that there is a right way and a wrong way to go about handling things such as this incident.

49.

But Defendant Mewborn and Forsyth County Schools did not handle things "in the right way." Defendants did not take corrective action to its known racially discriminatory and hostile educational environment.

50.

Vickery Creek's only response was to sponsor a club for minoritized students of color to get together and for *them* to come up with solutions to end the racism *others*, including Vickery Creek, was exposing them to.

51.

Students, including Promise Batiste, felt they were being isolated to talk with each other about their experiences, and not to be heard by faculty, staff, and administrators who could appropriately intervene.

52.

Ms. Guedes informed Defendant Mewborn that Promise Batiste as well as other students of color were constantly dealing with racism at Vickery Creek, and shared her, Promise Batiste, other students', and other parents' concerns that Vickery Creek administration is not listening to them or responding adequately when they report incidents of racism to them.

53.

Other parents, including Promise Batiste's best friend's mom, also notified Defendant Mewborn of this incident within days, and shared with Vickery Creek Administration concerns that Vickery Creek was not adequately addressing known issues and risks of racist harassment within the school.

54.

Defendants have had notice of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste to at Vickery Creek since April 2018 and earlier and continuing into February 2019.

55.

Defendants have had notice of the physical and educational harm its actions and inactions in fostering a racially discriminatory and harassing environment have had on Promise Batiste and other Black students at Vickery Creek since April 2018 and earlier and continuing into February 2019.

56.

Defendants have had notice of the psychological and educational harm its actions and inactions in fostering a racially discriminatory and harassing environment have had on Promise Batiste and other Black students at Vickery Creek since April 2018 and earlier and continuing into February 2019.

57.

Defendants have maintained a well-settled custom or practice of disregard for the psychological and physical safety of Black students' enrolled at Vickery Creek since April 2018 and earlier and continuing into February 2019.

58.

Defendants have had actual knowledge of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste to at Vickery Creek since April 2018 and earlier and continuing into February 2019.

59.

Defendants have been deliberately indifferent to the actual knowledge of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste and other Black students and students of color to from April 2018 and earlier and continuing into February 2019.

**October 2019**

60.

Ms. Guedes emailed Defendant Mewborn on October 19, 2019, about a series of incidents her daughter, Promise Batiste, had recently made her aware of.

61.

Ms. Guedes notified Defendant Mewborn that on or about October 18, 2019, during Promise Batiste's Georgia Studies class, a white female student uttered the word, "nigger," in the teacher, Defendant Crosby's clear earshot.

62.

The student's use of the word, "nigger," was not related in any way to any permissible educational context.

63.

Promise Batiste complained to Defendant Crosby in real time.

64.

Defendant Crosby did not pull the offending student aside, discipline her, refer her to administrators for discipline, or otherwise address the student's utterance.

65.

Defendant Crosby did not investigate Promise Batiste's complaint, choosing instead to disregard Promise Batiste and her complaint.

66.

Defendant Crosby responded with "oh" and continued teaching.

67.

In her email to Defendant Mewborn, Ms. Guedes shared with him that these kinds of incidents—where students make racist comments or racially harass students without the school's response or discipline— happen all the time.

68.

In his October 21, 2019 email response, Defendant Mewborn acknowledged the obvious need to investigate, and copied Defendant Lewsader in his capacity as the 8th-grade administrator. Defendant Mewborn indicated that Ms. Guedes's October 19, 2019 email was the first notice he and Defendant Lewsader had been made aware of the Georgia Studies incident.

69.

Defendant Mewborn stated that he and Defendant Lewsader had not been made aware of the incident because no student had come forward; he made no mention of Defendant Crosby or Promise Batiste's complaint to her.

70.

Defendant Mewborn indicated that he would follow up with the involved students in an investigation.

71.

In his October 23, 2019 email, Defendant Lewsader indicated that he was unable to confirm or deny the word, "nigger," was used after allegedly he spoke with Defendant Crosby and seven other students. He shared that he had taken time to educate all involved students of the harm the word incites and that Vickery Creek would not tolerate discriminatory language.

72.

In a same-day email, Ms. Guedes thanked Defendant Lewsader for looking into the incident but shared with him that he had not spoken to Promise Batiste or four other students, whom she named, that witnessed the student, whom Ms. Guedes also named, use the offensive language.

73.

Ms. Guedes further shared that incidents such as these happen frequently, and that Black students like Promise Batiste usually have no choice to "let it go" despite their frequency and severity because most times they do not have multiple witnesses or could meet whatever burden of proof the school has chosen to require before investigating incidents of racial discrimination.

74.

Ms. Guedes shared her expectation that with names of corroborating witnesses Defendant Lewsader would further his investigation. She shared that it is important to students like Promise Batiste and other Black and minoritized students of color that the school investigate and appropriately respond to incidents of racial harassment and discrimination because Vickery Creek students frequently get away with using discriminatory language at school in front of and directed at students of color.

75.

On October 23, 2019, Ms. Guedes and Promise Batiste attended a previously scheduled parent-teacher conference with all of Promise Batiste's teachers and Defendant Lewsader.

76.

During the conference, Ms. Guedes shared that Promise Batiste had been dealing with racism at Vickery Creek on a daily basis, with both Promise Batiste and Ms. Guedes becoming extremely emotional in the retelling.

77.

Ms. Guedes brought up the Georgia Studies incident with Defendant Crosby and Defendant Lewsader present, sharing that she had also expressed these concerns to Defendant Lewsader via email before the parent-teacher conference.

78.

Ms. Guedes shared with the assembled teachers and Defendant Lewsader that Vickery Creek's allowing students to use racially discriminatory language, including the word, "nigger," without investigation or consequence was damaging Promise Batistes feelings of self-worth and her mental health as well as her ability to learn within the school's learning environment.

79.

In a summary of the parent-teacher conference, Defendant Lewsader included a remark from Promise Batiste's science teacher, Kathryn Higginbotham, that Promise Batiste "is very bright but often doesn't engage and [she] is so quiet in my class. She seems so sad."

80.

In an October 24 email that followed up on his October 23 email, Defendant Lewsader confirms that he met with seven students during his investigation—two boys and five girls. One of the students he met with said he heard the word, "nigger," spoken.

81.

Defendant Lewsader did not speak with Promise Batiste or the four students whom Ms. Guedes identified for him as witnesses during his initial investigation, before sending his October 24 follow-up email, or at any other time.

82.

Defendants have had notice of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste to at Vickery Creek since April 2018 and earlier, and continuing into February 2019, which became severe and persuasive in October 2019.

83.

Defendants have had notice of the physical and educational harm its actions and inactions in fostering a racially discriminatory and harassing environment have had on Promise Batiste and other Black students at Vickery Creek since April 2018 and earlier, and continuing into February 2019, which became severe and persuasive in October 2019.

84.

Defendants have had notice of the psychological and educational harm its actions and inactions in fostering a racially discriminatory and harassing environment have had on Promise Batiste and other Black students at Vickery Creek since April 2018 and earlier, and continuing into February 2019, which became severe and persuasive in October 2019.

85.

Defendants have maintained a well-settled custom or practice of disregard for the psychological and physical safety of Black students enrolled at Vickery Creek since April 2018 and earlier, and continuing into February 2019, which became severe and persuasive in October 2019.

86.

Defendants have had actual knowledge of the racially discriminatory and harassing environment that its actions and inactions exposed Promise Batiste to at Vickery Creek since April 2018 and earlier, and continuing into February 2019, which became severe and persuasive in October 2019.

87.

Defendants have been deliberately indifferent to the actual knowledge of the racially discriminatory and harassing environment that its actions and inactions

exposed Promise Batiste and other Black students and students of color to from April 2018 and earlier and continuing into February 2019.

**November 2019**

88.

Weeks later, over the weekend of November 1-5, 2019, a number of white Vickery Creek students made a number of racially harassing, abusive, and threatening posts and comments directly at Promise Batiste and other Black Vickery Creek Students, in a Snapchat thread, including, but not limited to:

- "Mlk got sniped[.] No rights for blacks";

- "Bro u r black and live in foco [Forsyth County] like get the fuck outa [sic] here";

- "What did the good [sic] say when the first nigger was born" (multiple times);

- "If ur burnt im gona [sic] tie u to a pole and whip u just like they used to"

- "IF UR A NIGGGERRRR DIE"; and

- "I got my .378 ready to go."

89.

After Ms. Guedes notified Defendant Feldkamp by November 5 email of this message thread, the principal sent an email on November 6 to the school community over Forsyth County Schools' Campus Messenger.

90.

While rightly acknowledging the messages were "very inappropriate and caused concern to a number of our students and families," he claimed that none of the messages—not even the "I got my .378 ready to go" message—"directly threaten[ed] VCMS."

91.

Defendant Feldkamp's response, both in this email and afterwards, is exemplary of a number of actions by Forsyth County Schools administrators over the years to minimize and ignore known incidents of racial harassment, abuse, and bullying by white students against Black students and students of color like Promise Batiste

92.

After this event, numerous parents of bullied Black students reiterated long-standing reports of racialized harassment and abuse. Defendant Feldkamp assured parents that teachers had been made aware that Promise Batiste and other students of color had been threatened, and had been counseled on how to respond to it.

93.

Upon information and belief, no such counseling occurred; the administration considered the incident fully addressed upon the November 6 email.

94.

After the Snapchat incident, Promise Batiste began experiencing her first mental-health crises of anxiety, missing multiple days of school as a consequence.

95.

On November 8, Ms. Guedes asked Defendant Feldkamp to meet with her and Promise Batiste so that her daughter could be assured that this and related incidents were being taken seriously because Promise Batiste had developed significant anxiety against returning to school.

96.

Across a number of same-day emails, Ms. Guedes notified Defendant Feldkamp of many instances he should have already been aware of in which Black students had reported racially discriminatory actions by white students and had been punished or silenced as a consequence.

97.

Around the same time, other parents similarly raised specific concerns about disparate treatment of Black students and the impact it was having on their ability to access a productive education within the Vickery Creek environment.

98.

When Promise Batiste went to the school on November 8 to retrieve missing work, she was subjected to *more* harassment, this time by her Spanish teacher, Defendant Maedke. After Defendant Maedke prompted Promise Batiste to share the status of her current emotional state, Promise Batiste explained to her teacher her discomfort with students making statements like: "go kill yourself" and referring to her and her mother using the N-word, Defendant Maedke responded to the effect of "come on [Promise Batiste,] you know those kids are not going to 'hang you.' You really need to toughen up."

99.

After the November 8 exchange with Defendant Maedke—which occurred while Ms. Guedes was meeting with Defendant Feldkamp, Ms. Guedes asked Defendant Feldkamp for physical and psychological safety assurances for both her daughters before sending either back to school. She asked for assurances that teachers, staff, and students will not be allowed to make her feel worse as Defendant.

Maedke had. A planned meeting with the school safety-resource officials never occurred.

100.

By November 18, Defendant Feldkamp had not taken action on any of Ms. Guedes's requests offered in the interim that he host a conversation between Black students and Vickery Creek teachers and administrators about the multiple incidents of unaddressed racism that contribute to the severe and pervasive racially hostile environment Vickery Creek facilitates.

101.

In a same-day email, Ms. Guedes informed Defendant Feldkamp that both of her daughters were afraid to go to school with other children who called them the "N-word" and told Promise Batiste to kill herself. Ms. Guedes shared that Promise Batiste had lost weight, was having nightmares, and was in a therapist's care for depression. She specifically begged Defendant Feldkamp saying "…she is seeing a therapist for this trauma but I need to tell her something is being done and that things are changing."

102.

A "coffee and conversation" event finally occurred on November 22, 2019, attended by Vickery Creek administrators, including Defendant Feldkamp and Mr. Lewsader, around one dozen teachers, and many parents and students, mostly Black

and of color. During this event, the attending students reported having seen racism on a daily basis and hearing the word "n*gg*r." One reported having been shocked initially, but eventually having gotten used to it. Many of the Black girls were unable to speak, crying throughout the conversation while nodding in agreement.

103.

Defendant Feldkamp and Vickery Creek and Defendant Forsyth County Schools did not respond to any of these independently shocking events with any actions that would reasonably address either the immediate incidents of racism or the unaddressed incidents of racism, which Black students and parents in the community reiterated over the prior weeks.

104.

Instead, Defendant Feldkamp minimized Black students' experiences in a newsletter he sent to the school community announcing a the teaching of a single "lesson on kindness and respect," an amorphous collaboration with the University of North Georgia on cultural awareness and diversity, not reasonably designed to intervene meaningfully to improve the severe and pervasive racially discriminatory educational climate.

105.

Defendants failed to properly investigate or discipline students *and teachers* who contributed to the racially discrimination Forsyth County Schools imposed on

Promise Batiste, and the racially discriminatory climate Forsyth County Schools exposes Promise Batiste and other Black students and students of color to.

106.

Long before the November 2019 Snapchat incident, Defendants had actual knowledge of the severe and pervasive racial discrimination and harassment that its actions and inactions exposed Promise Batiste to at Vickery Creek.

107.

Even in response to the November 2019 Snapchat incident, Defendants remained deliberately indifferent to the actual knowledge of the severe and pervasive racial discrimination and harassment that its actions and inactions exposed Promise Batiste and other Black students and students of color to.

108.

Defendants remained deliberately indifferent to the actual knowledge that the severe and pervasive racial discrimination and harassment they had exposed Promise Batiste to compromised her mental, emotional, and psychological health as well as her access to educational opportunities.

109.

Defendants' repeated failure to intervene to intervene against the pervasive racially discriminatory environment evidences a well-settled custom or practice of utter disregard for Promise Batiste's safety and Black students' safety.

110.

Moreover, Defendants' repeated failure to intervene to prevent bullying, despite notice of actual physical, psychological, and educational harm to Promise Batiste and other Black students, and despite Promise Batiste and Ms. Guedes's repeated, well-documented, detailed pleas for intervention, evidences a well-settled custom or practice of utter disregard for Promise Batiste's safety and Black students' safety.

**Harmful Consequences of Defendants' Intentional Disregard of Promise Batiste and Lidiane Guedes**

111.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

112.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment and bullying caused Promise Batiste extreme emotional distress, depression, and anxiety she had never previously experienced.

113.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment and bullying instilled

heightened fear and anxiety that interfered with her accessing the educational opportunities Forsyth County Schools provides.

114.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment communicated that she and her concerns were not worth institutional response.

115.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment communicated *to the other students* that Promise Batiste and her concerns were not worth institutional response.

116.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment compromised Promise Batiste's mental health, which manifested in panic attacks and self-harming behaviors she continues to suffer from.

117.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment led Promise Batiste to attempt to die by suicide in January 2020.

118.

Defendants' repeated and systematic disregard of Promise Batiste's, and her mother's, pleas for intervention against racial harassment inflicted emotional distress on Promise Batiste and her mother, Lidiane Guedes.

119.

Promise Batiste's emotional distress has manifested in depression, anxiety, and self-harming behaviors she never previously experienced, and would not have but for Defendants' intentional disregard for Promise Batiste's and Lidiane Guedes', pleas for intervention against racial harassment.

120.

Promise Batiste has experienced considerable pain and suffering because of Defendants' intentional misconduct.

121.

Promise Batiste is under ongoing psychological, psychiatric, and medical care not needed before Defendants' intentional misconduct.

122.

Defendants' intentional misconduct has substantially interfered with Promise Batiste's accessing educational opportunities.

123.

Because of Defendants' intentional misconduct, Plaintiff, Promise Batiste was unable to attend school in the typical Forsyth County Schools environments with her peers or access the educational opportunities Forsyth County Schools ordinarily affords.

124.

Both through deprivation of educational opportunity and by causing disabling conditions that previously did not exist in either minor Plaintiff, Defendants' intentional misconduct has negatively affected Promise Batiste's educational trajectory and future economic earning capacity.

125.

Defendants' intentional misconduct toward Plaintiff Lidiane Guedes has inflicted emotional distress as well as pain and suffering on *her*.

13.

Defendants' intentional misconduct toward Promise Batiste has caused Ms. Guedes to accrue substantial medical expenses and lost wages, as she was her daughters' primary and custodial caregiver.

14.

Defendants' intentional misconduct has made Ms. Guedes and her daughter, Promise Batiste, targets of various attempts at retaliation, making them virtual

prisoners in their homes, reducing their quality of life, personal liberties, and enjoyment of their real property.

128.

Defendants' individual and collective refusals to take seriously Promise Batiste and Lidiane Guedes' repeated, well-documented, well-detailed complaints of racial discrimination, bullying, and harassment, especially as the events escalated in magnitude and frequency, evidences a custom or practice of disregard for complaints by Black students of racial discrimination and of pleas for institutional intervention against that discrimination.

129.

Defendants' individual and collective misbehaviors have inflicted immediate and lifelong economic damages to Promise Batiste in the form of reduced access to choice educational opportunity, loss of access to civic and community engagement opportunity, lifelong medical costs, loss of full enjoyment of her home and life, and lower lifelong earnings.

130.

Defendants' individual and collective misconduct have inflicted immediate and lifelong economic damages to Lidiane Guedes in the form of reduced time at work, lower lifelong earnings, uncompensated caregiving costs for her previously

healthy child, loss of full enjoyment of her home and life, and loss of access to civic and community engagement opportunity

131.

Defendants' intentional misbehavior shocks the conscience.

**Harmful Consequences of Defendants' Deliberate Indifference and Misconduct to Promise Batiste and Lidiane Guedes**

132.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

133.

Defendants' deliberate indifference and misconduct caused Promise Batiste extreme emotional distress, depression, and anxiety she had never previously experienced.

134.

Defendants' deliberate indifference and misconduct instilled heightened fear and anxiety that interfered with her accessing the educational opportunities Forsyth County Schools provides.

135.

Defendants' deliberate indifference and misconduct compromised Promise Batiste's mental health, which manifested in panic attacks and self-harming behaviors she continues to suffer from.

136.

Defendants' deliberate indifference and misconduct led Promise Batiste to attempt to die by suicide in January 2020.

137.

Defendants' deliberate indifference and misconduct toward Promise Batiste inflicted emotional distress on her mother, Ms. Guedes.

138.

Promise Batiste has experienced considerable pain and suffering because of Defendants' deliberate indifference and misconduct.

13159.

Promise Batiste is under ongoing psychological, psychiatric, and medical care neither needed before Defendants' deliberate indifference and misconduct.

140.

Defendants' deliberate indifference and misconduct has substantially interfered with Promise Batiste accessing educational opportunities.

141.

Because of Defendants' deliberate indifference and misconduct Plaintiff, Promise Batiste is unable to attend school in the typical Forsyth County Schools environments with her peers or access the educational opportunities Forsyth County Schools ordinarily affords.

11642.

Both through deprivation of educational opportunity and by causing disabling conditions that previously did not exist in Plaintiff, Promise Batiste, Defendants' deliberate indifference and misconduct has negatively affected Promise Batiste's educational trajectory and future economic earning capacity.

143.

Defendants' deliberate indifference and misconduct toward Ms. Guedes has inflicted emotional distress as well as pain and suffering on *her*.

14174.

Defendants' deliberate indifference and misconduct toward Promise Batiste has caused Ms. Guedes to accrue substantial medical expenses and lost wages, as she is was her daughter's primary and custodial caregiver.

18145.

Defendants' deliberate indifference and misconduct has made Ms. Guedes and her daughter, Promise Batiste targets of various attempts at retaliation, making them virtual prisoners in their homes, reducing their quality of life, personal liberties, and enjoyment of their real property.

**CLAIMS**

**CLAIM ONE:**

**Thirteenth Amendment to the U.S. Constitution**

146.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

147.

Section One of the Thirteenth Amendment to the U.S. Constitution provides that "Neither slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

14198.

The well-established intent of the Thirteenth Amendment is to "abolish slavery of whatever name and form and all its badges and incidents."

149.

The Thirteenth Amendment applies to more than economic relationships; it applies to all badges and indicants of slavery.

150.

The laws of the United States and the State of Georgia have clearly established Plaintiffs' Thirteenth Amendment rights at all times when Plaintiff Promise Batiste was enrolled in Defendant Forsyth County Schools.

20151.

Racialized and racially motivated threats of violence and assaults directed at people of African ancestry are badges of slavery, which the Thirteenth Amendment prohibits.

152.

Racialized and racially motivated actions of discursive violence and assaults directed at people of African ancestry are badges of slavery, which the Thirteenth Amendment prohibits.

12153.

Racialized and racially motivated disregard, by individuals and institutions, of known or foreseeable risks of harm caused by known or foreseeable actions and threats directed at people of African ancestry are badges of slavery, which the Thirteenth Amendment prohibits.

15224.

Retaliation for reporting racialized and racially motivated assaults and threats of violence and assaults is a badge of slavery, which the Thirteenth Amendment prohibits.

155.

Individual and institutional failures to respond appropriately Black students' complaints of racialized and racially motivated threats of violence and assaults are badges of slavery, which the Thirteenth Amendment prohibits.

15236.

Individual and institutional failures to protect Black students from known or foreseeable racialized and racially motivated discriminations, discursive harms, threats of violence, and assaults are badges of slavery, which the Thirteenth Amendment prohibits.

157.

Defendants Forsyth County Schools failed to protect Plaintiff Promise Batiste from known or foreseeable racialized and racially motivated discriminations, discursive harms, threats of violence, and assaults, all of which are badges of slavery, which the Thirteenth Amendment prohibits.

15248.

Defendants Feldkamp, Lewsader, Mewborn, Crosby, and Maedke, separately and collectively, failed to protect Plaintiff Promise Batiste from known or foreseeable racialized and racially motivated discriminations, discursive harms, threats of violence, and assaults, all of which are badges of slavery, which the Thirteenth Amendment prohibits.

159.

Defendants' intentional disregard for Plaintiffs' suffering racial discrimination by their employees and students constituted tacit approval of the discrimination that took place in the schools under their control, which the Thirteenth Amendment prohibits.

160

Defendants' deliberate indifference to Plaintiffs' suffering racial discrimination by their employees and students constituted tacit approval of the discrimination that took place in the schools under their control, which the Thirteenth Amendment prohibits.

## CLAIM TWO:

### Fourteenth Amendment to the U.S. Constitution

161

Plaintiffs allege and incorporate the preceding paragraphs by reference.

12562.

Section One of the Fourteenth Amendment to the U.S. Constitution provides that "No State shall…deprive any person of life, liberty, or property, without due process or law; nor deny to any person within its jurisdiction the equal protection of the laws."

163.

The laws of the United States and the State of Georgia clearly established Plaintiffs' Fourteenth Amendment rights at all times when Plaintiff Promise Batiste was enrolled in Defendant Forsyth County Schools.

164.

Defendants' intentional and deliberately indifferent misconduct singled out Black students for disparate treatment in school discipline, safety, and provision of educational opportunity, shocking the conscience, in violation of Fourteenth Amendment equal-protection guarantees.

265.

Defendants' intentional and deliberately indifferent misconduct shocks the conscience and deprived Plaintiff's due-process-protected interests in quality of life in violation of Fourteenth Amendment due-process guarantees.

276.

Defendants' intentional and deliberately indifferent misconduct shocks the conscience and has compromised Plaintiff's due-process-protected interests in personal liberty in violation of Fourteenth Amendment due-process guarantees.

287.

Defendants' intentional and deliberately indifferent misconduct shocks the conscience and has effected a taking on Plaintiff's full enjoyment of their due-

process-protected interests in real property in violation of Fourteenth Amendment due-process guarantees.

298.

Defendants' intentional and deliberately indifferent misconduct shocks the conscience and has affected a taking on minor Plaintiff's full enjoyment of their due-process-protected interests in educational property in violation of Fourteenth Amendment due-process guarantees.

309.

Defendants' intentional and deliberately indifferent misconduct shocks the conscience and has effected a deprivation of Plaintiff's due-process-protected interests in educational property without notice or hearing in violation of Fourteenth Amendment due-process guarantees.

## CLAIM THREE:

## 42 U.S.C. § 1981

170.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

171.

Section 1981(a) states that "all persons within the jurisdiction of the United States shall have the same right…to the full and equal benefit of the laws and

proceedings for the security of persons and property as is enjoyed by white citizens."

3172.

Section 1981(c) guarantees that "the rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination and impairment under color of State law."

3273.

In their individual capacities as non-governmental agents, separately and collectively, Defendants Feldkamp, Lewsader, Mewborn, Crosby, and Maedke impaired Plaintiff Promise Batiste's rights "to the full and equal benefit of the laws…for the security of persons…as is enjoyed by white citizens."

17334.

Separately and collectively, Defendants Feldkamp, Lewsader, Mewborn, Crosby, and Maedke impaired Plaintiff Promise Batiste's rights "to the full and equal benefit of the laws…for the security of persons…as is enjoyed by white citizens" "under color of State law."

175.

Section 1981 allows Plaintiffs to bring constitutional claims against the individual Defendants in their individual capacities, and against Defendant Forsyth County Schools.

17346.

As a result of the aforesaid conduct, Plaintiffs have been made to suffer humiliation, indignity, and embarrassment, have suffered emotional distress, mental anguish, economic harms, and other intangible harm, have been denied equal educational opportunities, and have sustained damages for which injunctive relief and recovery of compensatory and punitive damages may be had pursuant to section 1981.

## CLAIM FOUR:

## 42 U.S.C. § 1983

17357.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

17368.

Section 1983 provides that "every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress…".

179.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke engaged widespread customary practices in failing to report, investigate, manage, and respond appropriately to Plaintiffs' and other Black students and students of color's ongoing complaints of racial discrimination and harassment.

180.

Defendants' deliberate indifference to Plaintiffs' and other Black students and students of color's known experiences of racialized harassment and discrimination constitutes a persistent pattern of abuse by Defendant Forsyth County Schools' employees, including, but not limited to Defendants Feldkamp, Lewsader, Mewborn, Crosby, and Maedke.

13781.

Defendant Forsyth County Schools knew of this pattern of abuse through its administrative employees, Ms. Guedes's frequent reporting of the abuse her daughter, Promise Batiste, and other Black students suffered, and other parents' frequent reporting of the same abuse their children experienced.

18382.

Defendants' purposeful inactions disregarding the abuse Plaintiff Promise Batiste and other Black students and students of color suffered by student-on-student and teacher-on-student racial discrimination and harassment shocks the conscience.

39183.

Defendants' inaction constituted deliberate indifference to the abuse Plaintiff Promise Batiste and other Black students and students of color suffered by student-on-student and teacher-on-student racial discrimination and harassment.

18404.

Defendants' deliberate indifference is a moving force behind their violation of Plaintiffs' constitutional rights and the harms they have suffered because of them.

18415.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke were sufficiently aware of the history of widespread abuse to Black students and students of color, generally, and Plaintiff Promise Batiste, specifically, to be put on notice of the need to correct the racialized discrimination, harassment, and educational environment at Vickery Creek.

42186.

Despite repeated, sufficient notice, Defendants Forsyth County Schools, Feldkamp, Lewsader, and Mewborn failed to correct the racialized discrimination,

harassment, and educational environment at Vickery Creek, or take steps reasonably calculated toward accomplishing this goal.

187.

Separately, Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke's customary responses and inactions to the racial discrimination Plaintiff Promise Batiste and other Black students and students of color experienced resulted in deliberate indifference to these students' constitutional rights.

188.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke separately and collectively, subjected Plaintiff Promise Batiste to the deprivation of their constitutional due-process rights to substantive educational liberty.

439.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke separately and collectively, subjected Plaintiff Promise Batiste to the deprivation of their constitutional rights to educational property without due process.

14490.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke separately and collectively, subjected Plaintiff Promise Batiste and Lidiane Guedes to the deprivation of their constitutional rights to enjoyment of real property without due process.

14591.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke separately and collectively, subjected Plaintiff Guedes to a constructive taking of her real property without constitutionally mandated due process.

192.

Defendants have deprived Plaintiffs of their civil rights, created a hostile educational environment, and have violated Plaintiffs' rights to freedom from retaliation for the lawful exercise of their own federally guaranteed civil rights.

193.

Section 1983 allows Plaintiffs to bring constitutional claims against the individual Defendants in their individual capacities, and against Defendant Forsyth County Schools.

194.

As a result of the aforesaid conduct, Plaintiffs have been made to suffer humiliation, indignity, and embarrassment, have suffered emotional distress, mental anguish, economic harms, and other intangible harm, have been denied equal educational opportunities, and have sustained damages for which injunctive relief and recovery of compensatory and punitive damages may be had pursuant to section 1983.

## CLAIM FIVE:

## 42 U.S.C. § 1988

195.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

196.

Because this is an action, in part, to enforce 42 U.S.C. §§ 1981 & 1983 and Title VI of the Civil Rights Act of 1964, Plaintiffs are entitled to an award of all relief available under 42 U.S.C. § 1988, including "a reasonable attorney's fee as part of the costs."

## CLAIM SIX:

## Title VI of the Civil Rights Act of 1964

197.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

198.

Title VI of the Civil Rights Act of 1964 states that "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

199.

Programs that receive or participate in Federal financial assistance programs from the United States Department of Education have Title VI obligations.

200.

Forsyth County Schools is a "program or activity receiving Federal financial assistance" from the United States Department of Education.

201.

Title VI obligates recipients to operate in a non-discriminatory manner with respect to "race, color, or national origin."

202.

Title VI non-discrimination obligations include, but are not limited to, academic programs, student treatment, counseling, guidance, and discipline.

203.

Pursuant to Title VI, public-school systems have clearly established duties to not discriminate against students "on the ground of race, color, or national origin,"

and to protect students from intentional discrimination, including harassment, abuse, threats, and retaliation by teachers, administrators, and students.

204.

Title VI also clearly establishes that public-school systems may not intentionally disregard or be "deliberately indifferent" to actually known or foreseeable student-on-student or teacher-on-student racial discrimination.

205.

Title VI clearly establishes an affirmative duty on school-district officials and teachers who have corrective and disciplinary authority to take corrective and disciplinary measures to prevent and respond to actually known or foreseeable racially discriminatory harms.

206.

Title VI is enforceable through an implied private right of action.

207.

Defendants and all relevant parties and witnesses have actual knowledge that Promise Batiste identifies as Black.

208.

Defendants and all relevant parties and witnesses perceive Promise Batiste as Black or more broadly speaking as a non-white person of color.

209.

Defendants and all relevant parties and witnesses had and continue to have actual knowledge that Promise Batiste was being, has been, and continues to be harassed by student peers on the grounds of her actual or perceived race.

210.

Defendants and all relevant parties and witnesses had and continue to have actual knowledge that the student-to-student peer harassment and teacher-to-student harassment have been and continues to be so sufficiently severe and pervasive that it created a hostile, abusive educational environment.

211.

Defendants and all relevant parties and witnesses had and continue to have actual knowledge that the harassment has been and continues to be so sufficiently severe and pervasive that it has altered the condition of Promise Batiste's education.

24612.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke had and continue to have actual knowledge about the racial harassment.

213.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke have been and continue intentionally disregard known acts and complaints of racial harassment in a manner that shocks the conscience.

214.

Defendants Forsyth County Schools, Feldkamp, Lewsader, Mewborn, Crosby, and Maedke have been and continue to be deliberately indifferent to known acts of harassment.

215.

Defendant Forsyth County Schools violated Plaintiffs' statutory rights under Title VI through its intentional disregard and deliberate indifference to actually known or foreseeable racially discriminatory harassment, assaults, threats, and exposure to a racially hostile educational environment.

## CLAIM SEVEN:

### Section 504 of the Rehabilitation Act of 1973

216.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

217.

Section 504 of the Rehabilitation Act of 1973 provides that "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason

of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

218.

Forsyth County Schools is a "program or activity receiving Federal financial assistance" from the United States Department of Education.

219.

Under section 504, school districts are required to provide "free appropriate public education" to qualified students with a disability who reside within the school district's jurisdiction irrespective of the nature or severity of the disability.

220.

To qualify for section 504 protection, a student must: 1) have a physical or mental impairment that substantially limits one or more major life activities; (2) have a record of such an impairment; or (3) be regarded as having such an impairment.

221.

Plaintiff Promise Batiste did not have a qualifying disability before Defendants' deliberate indifference and misconduct in exposing them to a severe and pervasive racially hostile environment.

222.

Because of Defendants' actions and inactions, Plaintiff Promise Batiste developed emotional or mental illnesses that have persisted for an extended period of time.

223.

In both minor plaintiffs' situations, theirs are qualifying disabilities under section 504 that substantially limit their major life activities such as caring for oneself, concentrating, thinking, communicating, and learning.

224.

Defendants know or should know of both minor Plaintiffs' records of their impairments.

225.

Defendants know or should regard Plaintiff as having such an impairment.

226.

Despite this knowledge, Defendant Forsyth County Schools has not evaluated either minor Plaintiff for eligibility for services under section 504.

227.

Because of Defendants' failure to evaluate "qualified students with a disability" for eligibility for appropriate services, Defendants have not provided

Plaintiff Promise Batiste with the services necessary to provide them "free appropriate public education" as section 504 requires.

## CLAIM EIGHT:

## Individuals with Disabilities Education Act

### 228.

Plaintiffs allege and incorporate the preceding paragraphs by reference.

### 229.

The Individuals with Disabilities Education Act (IDEA) requires school districts, as local educational agencies, to provide eligible students with "free appropriate public education" in the "least restrictive environment."

### 230.

Through its Child Find provisions, IDEA places the affirmative burden on school districts to identify any child with a disability who needs special education or related services.

### 231.

Forsyth County Schools is a local educational agency that receives assistance from the state educational agency and the United States Department of Education to help pay excess costs of providing special education and related services to children with disabilities.

232.

Emotional disturbance, including anxiety disorder and depression, are eligible disability categories under IDEA.

233.

To qualify for IDEA services, a student's school performance must be "adversely affected" by their eligible disability.

234.

Plaintiff Promise Batiste did not have an IDEA-eligible disability before Defendants' deliberate indifference and misconduct in exposing them to a severe and pervasive racially hostile environment.

235.

Because of Defendants' actions and inactions, Plaintiff Promise Batiste developed emotional disturbances, including anxiety disorder and depression, which have persisted for an extended period of time.

236.

Plaintiff Promise Batiste's disabilities adversely affected her school performance.

237.

Defendants knew or should have known of Plaintiff's emotional disturbance disabilities and that they adversely affect her school performance.

23478.

Despite this knowledge, and despite Child Find provisions, Defendant Forsyth County Schools had not evaluated Promise Batiste for eligibility for services under IDEA.

23489.

Because of Defendants' failure to evaluate the Plaintiff Promise Batiste for IDEA services, Defendants had not developed an individual education plan that would detail the services necessary to provide them the "free and appropriate public education" in the "least restrictive environment" as IDEA requires.

4940.

Because of Defendants' failure to evaluate Plaintiff Promise Batiste for IDEA services, Defendants had not identified the "free and appropriate public education" or the "least restrictive environment" in which that education should be provided as IDEA requires.

5041.

Because of Defendants' failure to evaluate Plaintiff Promise Batiste for IDEA services, Defendants had not provided her the "free and appropriate public education" in the "least restrictive environment" as IDEA requires.

5142.

Because of Defendants' failure to evaluate Plaintiff Promise Batiste for IDEA services, Defendants did not intervene, as IDEA requires, to minimize the impact of Promise Batiste's disabilities on her accessing educational opportunity.

5243.

Because of Defendants' failure to provided Promise Batiste the "free and appropriate public education" in the "least restrictive environment," as IDEA requires, Promise Batiste's educational trajectory was harmed, and her lifelong economic trajectory, work suitability, and earning potential was consequently harmed.

## PRAYER FOR RELIEF

Defendants' conduct described in this Complaint is so objectively severe and offensive that it shocks the conscience, having caused each Plaintiff severe and permanent psychological, emotional, and economic harm; and deprived Plaintiff, Promise Batiste of educational opportunities and benefits she was entitled to by law.

**WHEREFORE**, Plaintiffs demand the following relief:

1. Judgment against Defendants, jointly and severally, for violations of Plaintiffs' constitutional rights under the Thirteenth and Fourteenth Amendment to the U.S. Constitution and their statutory rights under 42 U.S.C. §§ 1981 and 1983 and Title VI of the Civil Rights Act of 1964 in the amount of Five Million Dollars ($5,000,000), which is an amount sufficient to compensate each Plaintiff for all educational, emotional, and economic losses, including, but not limited to, pain and suffering she has suffered;

2. Evaluation for services and educational placement sufficient to provide Plaintiff Promise Batiste the "free and appropriate public education" she was entitled to under Section 504 of the Rehabilitation Act of 1973, and would remain entitled to should she pursue higher education in future.

3. An award of all attorney fees and costs incurred by Plaintiffs in litigating this action, including, but not limited to attorney fees and costs provided for by 42 U.S.C. § 1988; and

4. Any and all other relief the Court deems just to award, including, but not limited to equitable relief.

## JURY DEMAND

Plaintiffs respectfully request that this action be tried before a jury of twelve (12) competent persons.

This 1st day of November, 2025.

**REYNOLDS LAW GROUP, LLC**

_Thomas E. Reynolds, Jr._
Thomas E. Reynolds, Jr.
Georgia Bar: 77886
Matthew P. Shaw*
Georgia Bar: 101257
3390 Peachtree Road
Suite 1100
Atlanta, Georgia 30326
888-665-0241
treynolds@thomasreynoldslaw.com
matthew.shaw@vanderbilt.edu
* - admission to the Northern District
of Georgia pending